GENERAL ELECTRIC CO. v. LA GRANDE EDISON ELECTRIC CO. et al.

(Circuit Court, D. Oregon. February 24, 1897.)

MORTGAGES—FORECLOSURE BY BONDHOLDERS—TRUSTEES.

Holders of bonds secured by a mortgage made to a trustee cannot ignore the trustee, and foreclose the mortgage by a suit in their own names, without showing that they have requested the trustee to take advantage of a default of the mortgagor, and that he has refused or unreasonably neglected to do so.

F. V. Holman, for plaintiff.
C. A. Dolph, for defendant Security Savings & Trust Co.

BELLINGER, District Judge. This is a suit to foreclose a mortgage given by the La Grande Edison Electric Company to the Security Savings & Trust Company, trustee, to secure the payment of certain bonds of the mortgagor company held by the complainant company. The trust company demurs to the bill of complaint, and the question is presented as to whether the bondholders can ignore the trustee, and foreclose the mortgage by which their bonds are secured, without showing that the trustee has failed in its duty to do so. A number of cases are cited in support of the bondholders' right to prosecute such foreclosure, those mainly relied upon being the following: Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61; Railroad Co. v. Fosdick, 106 U. S. 47, 1 Sup. Ct. 10; Mercantile Trust Co. of New York v. Missouri, K. & T. Ry. Co., 36 Fed. 221. Morgan's L. & T. R. & S. S. Co. v. Texas Cent. Ry. Co., 137 U. S. 171, 11 Sup. Ct. 61, involved the question whether the trustee could proceed to a foreclosure and sale to pay the principal as well as the interest, without averring and proving that the bill had been filed for that purpose by request of the holders of 75 per cent. in amount of the outstanding bonds. It was contended that the trustee was so far subjected to the wishes of the bondholders that it was without right or power to proceed to a foreclosure for the collection of the principal sum before the date of payment in course, except upon the request of the holders of 75 per cent. in amount of the outstanding bonds. The court, in its opinion, says:

"We do not agree with this view. Whenever default upon the interest should continue sixty days after maturity and demand, then and thereupon it was declared that the principal of all the bonds should be and become immediately due and payable, and that the trustee, upon the request of the holder or holders of seventy-five per cent. of the outstanding bonds, and written notice thereof be served on the New York agency of the mortgagor, where the bonds and coupons were made payable, might take possession and operate the road; and upon like request it was made the duty of the trustee to foreclose the mortgage, and, after advertisement, sell the property at public auction to the highest bidder for cash. Hence, although, as to the particular form of foreclosure and sale at public auction by advertisement, and without the aid of the court, the proper construction would be that that course could not be taken without the request prescribed, this not only did not limit the power of the trustee to proceed by application to a court of equity to foreclose, but each of the mortgages contained near its close the following clause: 'It is hereby further agreed

that nothing herein contained shall be held or construed to prevent or interfere with the foreclosure of this instrument, the appointment of a receiver, or any other act or proceeding appropriate in such cases, by any court of competent jurisdiction.' There was nothing in the mortgages which took away the inherent right of resort to the court, and this clause did not impart what existed without it, but its insertion, evidently out of abundant caution, made it perfectly clear that the provisions relied on by the appellants did not apply to foreclosure by bill in equity, but to the cumulative remedy specified. It is easy to see why taking possession and selling without the intervention of the court should be guarded against, and the trustee not be required or allowed to proceed in that summary manner except on the request of a certain percentage of the holders of the bonds. Such proceedings might result in injury, which could not be predicated of those regularly taken in a court of equity. Arbitrary procedure by the trustee was not desirable, in view of the interests of both mortgagor and the bondholders as a class, while each would find the protection to which it might be entitled at the hands of the court. Mercantile Trust Co. of New York v. Missouri, K. & T. Ry. Co., 36 Fed. 221."

In short, the effect of the decision is that the trustees were restricted in their right to take possession and sell without the intervention of the court until such time as three-fourths of the bondholders might request that procedure, but that the right to foreclose by suit in equity did not depend upon any such condition.

The case of Railroad Co. v. Fosdick, 106 U. S. 47, 1 Sup. Ct. 10, is a case where the bonds provided that should default be made in the payment of any half year's interest, and continue for six months, thereupon the principal of all the bonds should become due and payable, "and the trustees may so declare the same, and notify the company thereof; and, upon the written request of the holders of a majority of the bonds then outstanding," the trustees "should proceed to collect both principal and interest of all such bonds outstanding by foreclosure and sale of said property or otherwise as therein provided." Two questions were presented: (1) Whether the court could require the payment of the principal of the debt, and order the sale of the mortgaged property therefor on default in payment of interest; and (2) whether there could be a decree of foreclosure without proof of the written request of the holders of a majority of the bonds. Both of these questions were decided in the affirmative. The court says:

"But inasmuch as, by the terms of the first article, the conveyance is declared to be for the purpose of securing the payment of the interest as well as the principal of the bonds, and by the fourth article the mortgagor's right of possession terminates upon a default of the payment of interest as well as the principal on any of the bonds, we are of the opinion that, independently of the provisions of the other articles, the trustees, or, on their failure to do so, any bondholder, on nonpayment of any installment of interest on any bond, might file a bill for the enforcement of the security by the foreclosure of the mortgage and sale of the mortgaged property. This right belongs to each bondholder separately, and its exercise is not dependent upon the cooperation or consent of any others or of the trustees. It is properly and strictly enforceable by and in the name of the latter, but, if necessary, may be prosecuted without, and even against, them."

In neither of these cases was the question raised on this demurrer involved. The question here is whether this foreclosure shall be at the suit of the trustees or of the bondholders. In the cases cited the questions were whether the principal of the debt had become due by default in the payment of interest, and whether there could be any foreclosure except upon proof that the bondholders had re-

quested it, and it was held that there could be such foreclosure; that the remedy which depended upon the consent of the bondholders was merely cumulative, and that the remedy by foreclosure was independent of it; that there was reason to guard the taking possession and selling without the intervention of the court; that such proceedings, if they could be arbitrarily taken by the trustee, might result in injury that could not be predicated of those regularly taken in court.    What is said as to the right of each bondholder to have a foreclosure without the co-operation or consent of any others or the trustee is with reference to the separate bondholder's right to compel payment,—to his dependence upon the other bondholders or the trustee.    No such co-operation is required.    The right of one does not depend upon the co-operation of the others.    Now, this right is in no way affected by the question as to whether foreclosure shall be had at the suit of the trustee, except in those cases where the trustee refuses to act.    The language used in the opinion in Railroad Co. v. Fosdick does not imply, as claimed for it, that the bondholders, or any of them, may foreclose the mortgage without regard to the trustee, but the contrary.    "We are of opinion," say the court, "that, independently of the provisions of the other articles, the trustees, or, on their failure to do so, any bondholder, on nonpayment of any installment of interest on any bond, might file a bill for the enforcement of the security.  *  *  *  It is properly and strictly enforceable by and in the name of the latter [the trustees], but, if necessary, may be prosecuted without, and even against, them."

The case of Mercantile Trust Co. of New York v. Missouri, K. & T. Ry. Co., 36 Fed. 221, does not affect the question upon which the demurrer in this case depends.    The sole question there was whether a suit for foreclosure brought a few days after default in the payment of interest was prematurely brought.    The mortgage provided for entry by the trustee and sale by advertisement, but it provided that this could not be done until six months after default and demand of payment.    The claim was that this limitation as to time applied to foreclosure as well as to the special proceeding provided for in the mortgage, but it was held otherwise, and that the special proceeding was merely cumulative, and that the right to proceed in equity was not thereby affected.    The opinion discusses the right of a couponholder, having a right of action at law, to resort to equity as well, upon the theory that, inasmuch as the mortgage is given as security for the payment of the interest as well as of the principal, if there was an intention to exclude him from the right to proceed in equity, such intention would naturally have been expressed in clear and unmistakable language.    The court says:

"Inasmuch as these proceedings stand upon the discretion of a court of equity, it is not strange that the parties were willing to leave to the bondholders and couponholders an open door to such a court."

All this has reference merely to the right of bondholders and couponholders to have a foreclosure in equity upon a default in the payment of interest, and, as to this, whatever right such bondholder or couponholder has, he has the right to have the trustee enforce for his benefit.

If, upon the authority of these cases, it should be held that the provision in the mortgage of the La Grande Electric Company by which it is provided that, if any default of such company shall continue for 30 days after written notice given by the trustee, the entire principal of the bonds shall, at the election of the trustee, be deemed immediately due and payable, applies only to the cumulative remedy provided for in the mortgage, and that the ordinary remedy of foreclosure and sale of the mortgaged property may be had upon default in payment of interest without such notice, the question still remains whether a bondholder can ignore the trustee, and foreclose in behalf of himself and other bondholders.    That is the question raised on this demurrer.    I am of the opinion that a coupon-holder or bondholder cannot thus foreclose against the trustee without showing some necessity for so doing.    The bill of complaint alleges "that the defendant trust company, trustee as aforesaid, has failed to take possession of or to operate said property, under the provisions of said mortgage or trust deed, or to foreclose the same," etc. But it does not appear that a majority of the bondholders, or that any bondholder, has requested the trustee to take possession of the mortgaged property or foreclose the mortgage; nor are any facts alleged which show a failure on the part of the trustee to so act.    The allegation that the trustee has failed to foreclose may be a mere conclusion, predicated upon its omission to do so, although, by the terms of the mortgage, it does not become the duty of the trustee to begin foreclosure or other proceedings under the mortgage until after written request by the bondholders; and, without this, good faith does not require such action by the trustee, except upon the request of the bondholders interested.    By article 5 of the mortgage, the bondholders have the right to elect whether the trustee, in case of default, shall proceed to foreclose in the ordinary way, or shall resort to the cumulative remedy of taking possession and collecting the rents and profits without foreclosure.    If the interests of the bondholders required, and the conditions of the mortgage permitted, the trustee to take action upon the mortgagor's default in the payment of interest or taxes, still it might properly wait until the majority of the bondholders indicated which of these remedies they desired the trustee to adopt; and, if the provision of the mortgage requiring default to continue for 30 days, and written notice by a majority of the bondholders, does not preclude a single bondholder in his right to have his lien enforced against the mortgaged property, it is, to say the least, not unreasonable that the bondholder desiring such action should apply to the trustee therefor.    This action is by all the holders of outstanding bonds.    These owners are entitled under the mortgage to control the action of the trustee in the remedy to be adopted.    Upon their election, the duty is put upon the trustee to proceed in the method chosen.    The trustee, if it might, ought not to adopt its own course, or proceed in the absence of such action by the bondholders; and, in omitting to do what it ought not to do, it has not failed in its duty to the bondholders.    Until, therefore, it appears, at least, that the plaintiff bondholders have requested the trustee to take advantage of the mortgagor's default, and the trustee has refused or unreasonably

neglected to do so, the bondholders are under no necessity of proceeding in their own names and against the trustee. The demurrer is sustained.